## MYERS v. WHITEHEART.

### MASSMAN BROS. & CO. v. SAME.

1. To entitle a party to an attachment upon the ground that defendant had done certain acts with a fraudulent intent, the affidavit must disclose the sources of information, or the facts upon which such a belief is founded.

2. The grounds of attachment in this case being (1) a sale of goods, at less than cost, by the defendant, a failing merchant, then negotiating for a cash compromise with his creditors; (2) his offer to them to compromise and thereby enable him to avoid an assignment (which was afterwards made); (3) his direction to his clerk to take down all empties and put up full barrels; and (4) a disposition of part of his property to certain preferred creditors (which last was satisfactorily explained)—the attachment was properly discharged.

3. Acts, made by statute a ground of attachment, done by an agent without the knowledge of his principal, will not support the statutory remedy of attachment against the property of the principal.

4. Upon the question whether an attachment was properly issued in the first instance, new facts or new grounds to sustain it cannot be brought before the judge by affidavits in behalf of plaintiffs.

Before FRASER, J., Sumter, February, 1885.

These were two cases of attachment against C. H. White-heart, jr., commenced December 31, 1885, one by Herman M. Myers and the other by A. E. Massman Bros. & Co. Defendant moved to discharge the attachment in both cases, and upon these motions, his honor filed the following order on February 14, 1886:

These cases were before me on motions to discharge attachments against the defendant issued by the plaintiffs. The motions were made at chambers at Sumter, and were heard on the notice with the accompanying affidavits and all the papers in the cases—affidavits on the part of plaintiffs in support of their showing for the attachments, and on the part of the defendant in reply. Parties were fully heard by counsel.

If it had been made to appear in the affidavits before me that, as suggested in argument, the defendant was at the commencement of these actions a resident of Florence, in the county of Darlington, the actions could not have been properly brought in this county, and the actions and the attachments would fall together. The defendant certainly knows where his residence is, and he says nothing about it. It is by no means a necessary inference, from the fact that the Sumter store is a "branch store," that the defendant is not a resident of the county. The question as to residence, however, may be made, if necessary, in some other shape in the progress of these cases, if the defendant is advised to do so.

It has also been insisted on in the argument with some earnestness that an attachment against an insolvent debtor is void as preference under our act in reference to assignments by insolvent debtors. It is true that under the late bankrupt acts all attachments issued against an insolvent debtor were *ipso facto* dissolved by certain proceedings in bankruptcy, voluntary or involuntary, instituted within a limited time after the issuing of the attachments. But Congress has power to pass bankrupt laws and the

State has not.   The provision above referred to was incorporated in the bankrupt act, and there is no such provision in our acts in reference to assignments by insolvent debtors.

Where there is a general assignment for the benefit of creditors, certain dealings with the property of the debtor within ninety days of the. assignment are void if the debtor "procures or suffers" them to be made "with a view to give a preference" to a creditor who has "reasonable cause to believe" the debtor is *insolvent.* But to hold that an attachment issued by a creditor on his own motion against an unwilling debtor, and otherwise valid, is void under the provisions of our assignment acts would require a stretch of the power of judicial legislation which fortunately is very rare in the United States.

The questions, however, still remain : Were the facts stated in the affidavits on which these attachments were issued sufficient ? and are they true ?

Taking the whole line of cases in our own books on the subject of attachments, and the recent case of *Ivy* v. *Caston* (21 *S. C.*, 583), I take the rule to be this : The affidavit should state facts within the personal knowledge of the witness, and the facts so stated should be sufficient to show that the property has been, or is about to be, dealt with in the manner prohibited, and that this was accompanied with the fraudulent intent, at least *prima facie.* If it does not make such a case, the attachment should not issue, and if issued, should be discharged on motion.   If the affidavit is sufficient on its face, the defendant may still be allowed to show by counter-affidavits that the statements are untrue, for, otherwise, the business of the country would be at the mercy of the reckless and unprincipled; and, perhaps, he may be allowed to introduce such new facts as may show that the inferences drawn from the affidavits are not the true ones.   The plaintiff cannot introduce into the case any new facts or evidence of fraud; he must stand on his original case, and if that fails the attachment fails.   This seems to be right in itself, as no man should be allowed to attach the property of another and hold it until he can get the evidence on which he can secure a lien.

In the cases before me I see nothing in a proposition to creditors asking them to accept 25 cents on the dollar, or an assign-

ment, which is improper or threatening. Paying off portions of the stock of goods to creditors who are pressing is certainly no evidence of fraud, even if the defendant had said he would make no preferences. The prices at which the segars and tobacco were sold, as mentioned in the affidavits, are not so extravagantly low as to excite in my mind any suspicion of fraud, unless there is some hidden meaning in the direction given by the defendant to his clerk, Dozier, about taking down empty barrels and putting up others. I see no harm in it. It now appears from all the affidavits that the defendant knew nothing of the alleged low sales of segars and tobacco, and that as to at least a part of the giving up of goods to certain creditors, he and his clerk were both imposed on, and were themselves the victims of a fraud.

I am not at liberty to consider any new facts which are stated on behalf of the plaintiffs to show a fraudulent intent, and, therefore, will not undertake to say how far the statements in reference to them are to be believed.

I therefore conclude that the affidavits on which the attachments were issued were insufficient, and that some of the more important facts therein stated are untrue in the sense that the acts done are the acts of the defendant, the clerk or managing agent being alone responsible for them.

It is therefore ordered, that the attachments in the above stated cases be, and hereby are, set aside and discharged, with ten dollars costs in each case, to be paid by the plaintiffs to the defendant. It is ordered, that the notices of motion, and all the affidavits used on the hearing before me, be filed with the clerk, and with the other papers in the cases.

From this order plaintiffs appealed.

*Messrs. Moises & Lee,* for plaintiffs.

*Messrs. Evans & Evans,* and *Johnson & Johnson,* contra.

February 18, 1886. The opinion of the court was delivered by MR. JUSTICE McIVER. On December 31, 1884, the plaintiffs in the cases above stated sued out warrants of attachment, under which the stock of goods in a branch store of the defendant at

Sumter was seized by the sheriff. The affidavits upon which these attachments were issued were made on the same day (December 31, 1884) by Simon Kahn as the managing agent of the plaintiff in the first named case, and by Alexander Morris as the managing agent of the plaintiffs in the case second above stated. These affidavits are very much the same in substance, and state, as the grounds for issuing the attachments, that the defendant has removed goods from his place of business and secreted the same for the purpose of defrauding his creditors; that "he has wasted and dissipated his stock of goods in a shocking manner; has sold his goods at any price offered and at less than first cost, to wit, that the defendant sold to Z. E. Walker, on the 30th instant, 2,000 segars for $50, that cost him, without freight, $70; that on or about the 30th instant the defendant sold to one Wheeler several boxes of tobacco at less than first cost, and without adding any charges for freight; that on the 29th instant the defendant wrote from Florence to his managing agent at Sumter to take down all empties and tap all full barrels, and dispose of goods as rapidly as possible; that said managing agent, Dozier, stated that he intended letting goods go at any price, stating further, 'I want to take my pocket book full to Whiteheart to-morrow night;' that defendant had stated to said Simon Kahn, on the 30th instant, that he would not prefer any of his creditors, but that on the morning of the 31st instant the defendant shipped two barrels of whiskey to one of his creditors, Myers, Edel & Co., and that he had also shipped several barrels of whiskey to Robert Hough & Sons, another of his creditors, in violation of his promise not to prefer any creditor; that defendant is giving away whiskey and segars to his friends, and is thereby defrauding his creditors; and that defendant has admitted that he was insolvent and had written a circular letter to his creditors proposing to pay twenty-five cents on the dollar in full of their claims, which, if not accepted, he will be compelled to make an assignment for the benefit of his creditors."

The defendant made a motion before Judge Fraser, at chambers, to discharge the attachments based upon his own affidavit and that of J. T. Dozier, his clerk in the Sumter store. These affidavits substantially deny all the allegations of fraud in the affi-

davits upon which the attachments were issued, explaining that the shipment of whiskey to Myers, Edel & Co. was made through an imposition practised by the agent of that house on the clerk, Dozier, and that the whiskey sent to Robert Hough & Sons had been shipped back to them about two weeks before the attachments were issued, because there was no demand in the Sumter market for that quality of liquors. Defendant in his affidavit admits that he did sell goods "as rapidly and closely as possible, but only in the legitimate course of his business, and with a view of paying up his creditors, many of whom were becoming importunate." He also admits that he wrote to Dozier, his clerk at Sumter, "to take down empties and to put up fresh barrels, as the business was then going on, and he was awaiting the action of his creditors," in response to his circular letter proposing a compromise, which proposition some of them had indicated a willingness to accept. He also says that if such reckless sales, as those described in the affidavits upon which the attachments issued, were made, they were without his authority. Finally, he says that he made an assignment to the said Dozier for the benefit of his creditors on the 2d of January, 1885. Dozier, in his affidavit, denies making the reckless sales attributed to him, and says that the defendant never at any time authorized him to sell any goods for less than their true value, or for the purpose of defrauding his, the defendant's, creditors. He also denies the statement that he said he intended to let goods go at any price, as he wanted to take a full pocket book to defendant.

The motions to discharge the attachments were heard upon these affidavits, together with all the papers in the cases, as well as affidavits submitted by the plaintiffs, "in support of their showing for the attachments," and affidavits on the part of the defendant in reply. The Circuit Judge held that he was not "at liberty to consider any new facts which are stated on behalf of the plaintiffs to show a fraudulent intent, and, therefore, will not undertake to say how far the statements in reference to them are to be believed. I therefore conclude that the affidavits on which the attachments were issued were insufficient, and that some of the more important facts therein stated are untrue, in the sense that the acts done are the acts of the defendant, the clerk or managing

agent being alone responsible for them." He therefore ordered that the attachments be set aside and discharged.

From this order plaintiffs appeal upon the following grounds: Because of error in holding: I. That the affidavits upon which the attachments were obtained in said cases were insufficient. II. That the said defendant was not responsible for the acts of his managing agent. III. That he could not consider the new facts stated in the affidavits on behalf of the plaintiffs against the motion to discharge the attachments.

Upon the first ground, we think that the view taken by the Circuit Judge is fully sustained by the cases in this State. *Smith & Melton* v. *Walker*, 6 *S. C.*, 169; *Brown* v. *Morris*, 10 *Id.*, 469; *Claussen* v. *Fultz*, 13 *Id.*, 478; and *Ivy* v. *Caston*, 21 *Id.*, 583. The allegation, that a person has done a certain act with a fraudulent intent, must necessarily be based upon information or belief, and, therefore, in such a case the rule is well settled that the sources of information, or the facts upon which such belief are founded, must be stated. The particular facts stated as to the sales of segars and tobacco at less than cost, do not, in our judgment, warrant the conclusion that the defendant intended to defraud his creditors. We suppose it is not very uncommon for merchants, under certain circumstances, to sell goods for less than cost; and when it is remembered that the defendant was negotiating a compromise with his creditors, which he seems to have had reason to expect would be accepted, he might very well have sold goods at very low prices with the most honest intentions, so as to enable him to get the money to meet promptly his offer of compromise.

We agree with the Circuit Judge, that nothing to the discredit of the defendant could be inferred from his letter to his clerk at Sumter, directing him "to take down the empties and put up the full barrels." This is just what he would probably do if the compromise was effected, as he had reason to expect would be the case. The delivery of the whiskey to Myers, Edel & Co., as well as the previous shipment to Robert Hough & Sons, is fully explained in entire consistency with the defendant's honest intentions. The fact that defendant had written a circular letter to his creditors, proposing to pay twenty-five cents on the dollar in

full of their claims, or to assign all his property for their benefit, certainly constituted no evidence of an intent to defraud his creditors, especially when it was followed by the fact that such an assignment was actually executed within two days—probably as soon as practicable—after the attachments were levied.

We do not think the second ground of appeal is well taken. While it is true that a principal is liable for the acts of his agent within the scope of his agency, yet this is not universally true. Ordinarily a principal is not liable criminally for the acts of his agent, although he may be liable for the fraud of his agent in the disposition of property intrusted to his care, to whom he has committed the custody of such property, as in *Reynolds* v. *Witte*, 13 *S. C.*, 5. But this case differs materially from that. There certain negotiable coupon bonds were lodged with the plaintiff's agent as collateral security for the payment of borrowed money, and fraudulently disposed of by the agent, and the principal was held responsible upon the ground that he had impliedly agreed to safely keep the collaterals until the maturity of the notes given for the borrowed money, and if he failed to do so, whether through the negligence or fraud of the agent to whom he had intrusted their custody, he was responsible. Here, however, no element of contract enters into the transaction. The plaintiffs are seeking to enforce the payment of their debts by a severe statutory remedy, which can only be made available where the defendant has done certain things prohibited by the statute; and until it is shown that the defendant has himself done or authorized another to do, some one or more of the things prohibited by the statute, he does not render himself liable to so stringent a proceeding. It is not, in our judgment, a case for the application of the doctrines growing out of the relation of principal and agent. There is no testimony whatever tending to show that the reckless sales of goods in the Sumter store, attributed to the clerk, which, however, are denied by him, were authorized by or even known to the defendant, and we do not think he can be held responsible for them, even if the allegations in the original affidavits as to such reckless sales by the clerk be true, about which there is no little conflict in the testimony.

As to the third ground, we agree with the Circuit Judge, that

he was not at liberty to consider any new facts stated on behalf of the plaintiffs to show a fraudulent intent. The question before the judge was whether the attachments were properly issued in the first instance, and to determine that question he could only consider the grounds upon which the attachments were originally applied for, and not any new facts or new grounds for the first time stated at the hearing of the motion to discharge the attachments. The question to be decided was whether the showing, made at the time the attachments were issued, was sufficient. It is true that the code provides that if the application to discharge an attachment be based upon affidavits on the part of the defendant, but not otherwise, the plaintiff may oppose the same by affidavits or other proofs, but this manifestly means that the plaintiff may, by affidavits, contradict or rebut the statements made in the affidavits submitted by the defendant, and not that he may state new facts—make a new case. This would be manifestly unjust to the defendant, and contrary to the usual course of investigation in a court of justice.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.